firing firing firing firing firing Good morning, Your Honor. Morris E. Fisher, the appellant here, Mr. Webb. I think there's two key documents that the court should look to in deciding this case. One of them is the proposal to remove, which is on 124 of the record, the appendix, which basically states your conduct in submitting falsified documents to receive compensation while on the periodic rules is unquestionably unacceptable, meaning the reason that you are terminated, Mr. Webb, is because you submitted false documents and the reason you did that was to receive compensation. If you contrast that with page 16 of the brief of my adversary, my adversary states that without a sight, because that's not what this case was about, but she states that the filling out of the form, of the CA form in itself, that there's lots of reasons that the Postal Service would want to know why somebody was working, raising cattle, doing whatever. Perhaps if they were good enough to do that, they could have gone ahead and delivered mail like they should have. But that wasn't what the charge was. The charge was, did you, what the center of this case is, did you receive compensation while you had your injury and did you submit these false documents in order to do that? And the weight of the evidence here is that he didn't. And the reason that he didn't is because the only thing that the administrative judge points to is a gain that he had in one year of 3717. So your theory is that it can't be material. That's right. If he would have gotten the compensation, even if he'd made an accurate disclosure. Right. That's right. It's not material. And if you look at the tax returns, there's no allegation here that the tax return was falsified, that we don't believe you that you really took a loss for the year 2005-2006. The allegation here is that for that period of time, on the CA form, you should have disclosed that you sold some cattle and you made $3717. And my client had a good argument, which the judge didn't really address at the lower level, which is, is that called income? Do I know that that's income when overall I take a loss for the year? Well, how do we know that the compensation is unaffected by gross receipts from business? How do we know that? How do we know that it has to be net profit? Because I think what's critical here is on his tax returns. But you're saying that his workman's compensation or whatever it was would have been unaffected by the disclosure of this farming income. What's the basis for that? Where does the regulation say that it doesn't make any difference that you get gross income as opposed to net income? We're only concerned with net income. How do we know that? I don't know that we do know that, but I don't think that the AJ addresses that in his answer. He says that he earned this money just selling the cows. And there was not anything at this hearing, certainly that's been presented here in the Applebee's brief, that says that the very act of this was fraudulent. That he had this good faith reliance on his overall tax return, which took a lap. I thought your point was in your briefs that he didn't understand that farming was to be hobby farming, passive, or whatever you want to call it, was considered employment under the Department of Labor regulations. But when they clarified in a later submission or later notice to him that farming was included, he immediately reported it. Right, right, he did. The question is, isn't the question whether it really was covered by that document? Well, he did, he did. It's going to be very hard for you to prevail on the facts and on intent and all this, that all of that was presumably hashed out and decided below. We can't really revisit all that. I'm not sure I understand your honor's question. If you could, I'm not sure I understood your question, your honor. The Department of Labor notice did not say farming was included. Right. And so he didn't report farming. Right. But when they did change it to say farming was included, he immediately reported it. Okay. So, so he reported it. But there's nothing that... You're not any longer arguing that it wasn't covered, right? Right. I'm not arguing whether it was covered or not. I'm arguing, was there any consequence of him reporting that? That's what we don't have in this case. We don't have anything from the government that shows he got a benefit one way or the other by reporting this or not. That's where I think the government's case breaks down. Why does it have to be a benefit? Isn't your best argument that the form itself did not specify farming as a business or income from farming to be reported? And once it was amended to be specifically covered, he did so? Well, that's an argument as well. I mean, that's certainly true. I mean, it looks like that is exactly what he did. So that, you know, I think, though, even with his intent, you know, because that's what this case boils down to, that there's nothing here that all that they had was a credibility. We don't, you know, we don't... If the form was not clear that you needed to report it, and he read it one way, would there be intent to deceive at that point if the form was not clear in and of itself? Well, if the form was not clear, that would certainly negate his intent to deceive. If the form was clear, the Bradley case, which we cited in our brief, was in Bradley, even though it was established that the person put down the wrong dependent on purpose, that the person said, I'm with my second daughter, or I'm with my first family when he was with his second. The board held that because there was no difference in the amount that he would have gotten anyway, which they have the burden of showing, they didn't show that. So as a result, I mean, that's a separate argument, which negates that he had intended to defraud. Well, what about that separate argument? One of the forms that he signed asked about involvement in business enterprises. It's pretty clear he was involved in a business enterprise, wasn't he? Well, you know, on one hand, he says, you know, he did report it on his taxes, but he says he gave his accountant his taxes. On the other hand, he says that he took a loss, and it was more or less a hobby that he did. So it wasn't a business enterprise? Well, he said on the form, he says he didn't consider it to be a business enterprise, and probably I'm thinking this because he says he took a loss. He didn't really do it for business, and the person is not an accountant, and he's not a tax lawyer. So that was my client's position. So the problem is we've got an administrative judge at the board who didn't believe that, who didn't believe the explanations for the non-reporting. For that particular argument, on that particular point, but the court has to, as it says in the Jacobs case, where the Federal Circuit reversed the board, that you have to look at the weightiest evidence. The weightiest evidence in this case is the tax returns, which were never challenged to be fraudulent. So the whole thing comes down to being the case. The man here could have been charged with you filled out a form falsely, or this was inappropriate conduct, or whatever the story was, and this might be a very different case. The narrow issue that the court is looking to today is did this person do this for financial gain, as it says, and that's what he had to ultimately defend on his proposal to remove. So I just think with these judiciary reviews, it's not like an issue where the board can go back and see what really should have happened. On this issue, the government didn't sustain that verdict. Thank you. Ms. Winmuller. Good morning, Your Honors. My name is Michelle Winmuller, and today I will be representing the respondent, United States Postal Service. Your Honors, when Federal employees seek workers' compensation benefits using the VA-7 form, they're asked a very simple question. Did you work outside of your Federal employment during the period for which you're claiming benefits? And then it goes on to even provide additional instructions. In one of three of the four forms that he filled out, it told him that he should even list things such as self-employment, volunteer, et cetera. In the other form, it said that he should list anything that had to do with business enterprises or anything for which he received any payment of any kind, not necessarily net income or net profit. The answer to that question is important and material, because if he answers yes, he was involved with some sort of work, that lets the government know that it should ask further questions. OWCP has a number of investigatory tools available to it to ask follow-up questions when it thinks that an individual might no longer be totally disabled for work and might possibly be able to go back to work in some capacity. That's what the purpose of this question is. By answering no, falsely answering no, when Mr. Webb knew that he owned and operated a 109-acre cattle farm throughout the period. What if it was just a hobby farm and not for profit? If it was just a hobby and it wasn't work? You know, that's a somewhat difficult question, Your Honor. The form itself uses an et cetera type of language in saying it's volunteer work or self-employment or something along those lines. It doesn't indicate hobby. Well, it doesn't really cover hobby farming. Does it specifically? There it does not, although in the regulations from OWCP, it indicates that the individual is supposed to list even volunteer work or any kind of work or activity that would indicate they're no longer totally disabled. But is the individual supposed to go back to the regulations in order to figure out what the form means? Not necessarily, Your Honor. But in this instance, it was not merely a hobby. This is something that not only was he outperforming work. What if he believed it was a hobby? If he believed it was a hobby, that might negate intent. However, here the AJ determined that it was not credible when he said he thought. Would he have to report it if it was a hobby? Suppose that somebody had a stamp collecting hobby. Was he supposed to report that on the form? I don't believe so, Your Honor. No, but in this instance, one of his excuses was that this was merely a hobby and that's why he didn't report it. That was one of the many things that the administrative judge considered. Well, maybe it was not an excuse. Maybe it was just being truthful at that particular point in time. He felt it was a hobby since there are a lot of hobby farms available somewhere in the country. That's true, Your Honor. Not necessarily for income or otherwise. Absolutely, Your Honor. But again, in this instance, the administrative judge specifically considered that and found that for a variety of reasons, not the least of which was his demeanor at the hearing. AJ found that that wasn't credible, that she simply did not believe him when he said he thought it was merely a hobby, part of which likely came from his tax returns, not the fact that he ultimately lost income in the end, but the fact that he said he was materially participating in a business. It's awfully hard to say that something is merely a hobby when you're then reporting it as business income. And again, the reason that his answer was material here is not... Would it make a difference on the tax reforms if it were a hobby as opposed to business? I mean, you'd still have to report the income, wouldn't you? You would, although I don't think you would use the form. I'm not an expert on tax law, so I can't speak to that specifically, but my suspicion would be you would be using a different form. I think that there are tax forms dealing with income from hobbies, and he specifically used the one that was for a business. I've never seen a hobby... And I could be wrong, Your Honor. I could be wrong, Your Honor, but I don't think that it would be on this particular form where he checks off that he's materially participating in what was called a business. And again, the reason his answer is material is not based upon whether he's losing or gaining income in the end. In fact, the CA-7 that he was responding to didn't have any line for providing income at all. It just told him to list the work. Is every false statement material? Not necessarily, Your Honor. I mean, I could not speak for you as to which lines on the CA-7 Department of Labor would think are not material, but perhaps if you made a mistake or provide false information with regard to something like your telephone number, that would not be material. But question three goes to the heart. But any false answer to question three is material? Yes, Your Honor. And the reason it is material is because the entire purpose of question three is to let Department of Labor know whether it should be conducting a follow-on investigation to find out if the individual is still totally disabled for work. By answering that question falsely in any way, it's preventing Department of Labor from doing its job and going out and conducting that investigation. By answering no to that question when, as the AJ found, Mr. Webb knew that he was performing work involved with a business, et cetera, he concealed that information and prevented Department of Labor from doing its job, thereby eliminating any risk that he would lose his benefits. His goal was to keep on getting compensation, and by not indicating it, it would keep Department of Labor from doing that investigation. As to his intent, Your Honor, again, the AJ found that there was intent to deceive. Intent to deceive may be proven by the existence of the false information combined with the lack of any credible explanation. The AJ found that there was no credible explanation here for a variety of reasons, including his demeanor at the hearing, which the AJ described as of someone struggling to provide a plausible explanation for failing to report that he had been self-employed when he clearly understood that he had been self-employed as a farm operator. The AJ merely confirmed the evidence of lack of credible explanation that we ourselves had gathered through our investigation and through the multiple times that we gave Mr. Webb an opportunity to explain his actions both before and after charging him. So you don't think that his prompt changing of the answer to the question when they added farming is worthy of note? That's an interesting point, Your Honor. I think one thing about that is that it's not exactly accurate that he promptly changed his answer. OWCP regulations provide for a way that an individual, if they realize that there's a mistake on one of the forms they submitted, can get that change, that false information, corrected. He never went back and sought to have his original CA-7s altered in any way. Rather, he received a separate DOL form called a 1032, something sent to all individuals, disabled employees, on the rolls once a year. He received that form. In it, he was asked a differently worded question with differently worded instructions, and he responded there that farming was a part of it. He never went back and changed anything. So why would he have to? I mean, he just reported it. Well, one of the things... It's a correction, isn't it? It's not a correction under OWCP's procedures. I believe it's a 20 CFR section 10.13. The regulations provide that he needs to go to a district office and seek the correction of something that was wrong in the form. Or a copy of the regulations sent to him along with the new form? That I don't know, Your Honor. So how is he supposed to know about the regulations? Well, first of all, the regulations are public record, and he could have gone to the internet, for example, to find them or anywhere else. But the new form wasn't meant to change the old form. It wasn't just a new version of the CA-7. It was clear. It was much clearer than the old CA-7, right? Well, it was for a different purpose, Your Honor. The CA-7 is clear. Did you perform work of any kind? And then goes on to explain that even includes things like self-employment, which he had even volunteered on. But what did the A.J. say about the correction? The A.J. acknowledged that the correction was made, but then ultimately determined that that was merely one of his explanations that she did not find to be credible. It's in her opinion that she... What does that mean? That she didn't find to be credible? That that was... He had argued that he didn't have the intent to deceive here and offered up many reasons why he didn't think he had the intent to deceive and had argued that this later disclosure showed that he didn't have the intent to deceive at the time that he submitted the CA-7s in the first place. The A.J. took that and all of the explanations that he put into evidence and found that overall nothing of what he had to say took away from her the fact that he had the intent to deceive. Two other things I would note about disclosure is that the disclosure element that Mr. Webb is talking about, he relies upon board cases for that. And the board cases that discuss disclosure also say that it should be combined with the finding that there was a mistake made in the first place. And again, here, the A.J. determined that there was no mistake, but in fact he had knew exactly what he was doing when he answered the CA-7s in the first place. So even if there was disclosure later, there wasn't that mistake combined with it that would tend to negate an inference of intent. And the second thing about that is that those same board cases discussing disclosure just talk about it as something weighing against a finding of intent,  a finding that there was no intent to deceive. It would be one of the things that the administrative judge could take into consideration in rendering a determination of credibility on this and looking at the totality of the circumstances. It didn't compel that the A.J. find something different than what she found. And because there is substantial evidence in the record, namely all of her credibility findings as well as the documents themselves, to support her findings, there's no basis for overturning them. Turning to penalty, Your Honors, unless you have any further questions about the other elements, there are only two permissible bases for overturning a penalty upheld by the board. If the Postal Service failed to consider a relevant Douglas factor or if the penalty exceeded the bounds of reasonableness. Here, although Mr. Webb has argued that the factors somehow should have been weighed differently, there's been no argument that any of the factors were not considered in the first place. And as to reasonableness, this Court has repeatedly held that removal is a reasonable penalty even for a first instance of falsification. An example of that first instance came in the Beverly case, another Postal Service case, with a supervisor who had worked for the Postal Service for 10 years, risen to the level of a supervisor, had no prior disciplinary history, and one day submitted a false sick leave claim saying that she was out that one day home when in fact she was seen at a football game. And the A.J. and the board found that that was a proper basis for removing her, and this Court upheld. Where does the A.J. discuss the correction? What page? Yes, Your Honor. Sorry, I believe it's on page 8 of the initial decision. Let me double-check that. Oh, no, I'm sorry. That was the demeanor-based credibility finding that I'm looking at. It is on the bottom of page 5 and the top of page 6, starting with the last two words of page 5. The appellant stated that in March 2007 he completed a DOL form entitled Part A Employment Form, which instructed him to report farming income, and he did so. He stated that after completing the employment form... Where does the A.J. deal with that testimony? The A.J. on pages... Lower on page 7 indicates that there were a number of reasons that he provided, including that one, and on page 7 turns to saying, considering the totality of the circumstances and the appellant's varied explanations for not reporting his farm operation on Form CA-7, I find the appellant's testimony... And on the next page, the A.J. goes on to say, on the top of page 8, moreover, the appellant's demeanor during his testimony was that of someone struggling to provide a plausible explanation for failing to report that he had been self-employed when clearly he understood that he had been self-employed as a farm operator. And again, she's talking about... He doesn't specifically address this. No, she was aware of it, but she didn't put a separate line dealing with that as part of the credibility determination, but nonetheless determined that even being aware that that was one of the explanations he had provided, looking at the totality of the circumstances on balance, she found that the evidence weighed towards a finding of intent. If you have any further questions, I'd be happy to answer them. Otherwise, I will rest. Thank you, Your Honors. Commissioner? Well, Your Honors, for the majority of the 10 minutes or 15 minutes my adversary used, I think we just heard a summary of my argument, which is my adversary's case and argument would be very, very good. She said things like, the failure to fill this form out keeps the department from doing its investigation, or that this man could have gone to the Internet to find out. Whether it could have done that or not, that's not the issue in this case. This case is not about... And they could have charged this man with that. They could have explained to him, proposal to remove. Here's the problem with this, Mr. Webb. We think that when you don't fill this out correctly, the reason you're not doing that is because you're too lazy to get your butt to work. And you could be delivering mail, and that's what you should be doing. But that's not what the charge is. That's not what the case is about. And it gets to a whole notice issue of how his attorney at the administrative trial conducted the hearing and how he prepared for it. It's not really fair to the guy that now we're going to say, well, you didn't fill it out. Here's the reason. Here's the thing that you caused the damage here. It also leads to the Douglas factor, which my adversary touched on, is that it's not exactly true that these things are not unreviewable. The court does look to, as it says in the Brown case, the appellant's past disciplinary record, the effect on the offense of the appellant's ability to perform on a satisfactory level, and explaining why a lesser penalty would have been ineffective, which they don't do any of this. The bottom line here is this is not a strict liability type of thing, where if you're carrying dynamite in your car, we don't care how careful you were or what your intent was. If it blows up, you're liable. It's not like you filled out the form. The government had this obligation, it had the burden to prove by preponderance that he did this for gain as well as he was charged with on the proposal to remove, for the financial gain, for the income. The only thing that they had was this $3,000 sale of cattle for one year and $1,700 for the other, which on his tax return for the overall year said he took a loss. With that, I will submit. Thank you. Case is submitted.